1  SUE CAMPBELL
   Attorney at Law, State Bar Number 98728
2  1155 North First Street, Suite 101
   San Jose, California 95112
3  Phone: (408) 277-0648
   Fax:    (408) 938-1035
4
   Attorney for Plaintiffs
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10  MIKE GELLER AND MIKE YARBROUGH          CASE NO.  C 08 01819 PVT
    AS TRUSTEES OF THE INTERNATIONAL
11  BROTHERHOOD OF ELECTRICAL               COMPLAINT FOR MONEY
    WORKERS LOCAL 302 HEALTH AND            ON A BREACH OF
12  WELFARE AND PENSION TRUST FUNDS,        COLLECTIVE
                                            BARGAINING AGREEMENT
13                  Plaintiff,              VIOLATION OF E.R.I.S.A. AND FOR
                                            AN INJUNCTION
14  vs.
15  3-D TECHNICAL SERVICES, INC.,
    a California Corporation,
16
                    Defendant.
17

18      COME NOW Plaintiffs, by their attorney, Sue Campbell, and allege and show to the

19  Court as follows:

20      1. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. Sections 185, 1132.

21      2. Plaintiffs MIKE GELLER AND MIKE YARBROUGH are trustees and fiduciaries

22  of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 302

23  HEALTH AND WELFARE AND PENSION TRUST FUNDS.

24      3. The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL

25  302 HEALTH AND WELFARE AND PENSION TRUST FUNDS, hereinafter "Funds", are

26  Taft-Hartley funds as defined at 29 U.S.C. Section 186 and "employee pension benefit plans"

27  as defined at 29 U.S.C. Section 1002(1), (2).

28      4. The Defendant 3-D TECHNICAL SERVICES, INC., a California Corporation, is an

                                    1

COMPLAINT FOR MONEY ON A BREACH OF COLLECTIVE BARGAINING AGREEMENT

1   employer as defined in 29 U.S.C. Section 1002(5). The Defendants were at all times mentioned

2   herein and now are authorized to do business in the State of California, and further, that they

3   are now authorized to do business and are actually doing business in the County of Contra

4   Costa, State of California.

5       5.  At all times material hereto, there have been in full force and effect collective

6   bargaining agreements covering the wages, hours and conditions of employment of certain

7   employees of the Defendants. True and correct copies of the executed signature page, collective

8   bargaining agreement, and pertinent sections of the trust agreement are attached hereto and

9   incorporated herein by reference as Exhibit 1.

10      6.  By its terms, the aforementioned collective bargaining agreement requires the

11   Defendants to make payments to certain Funds (Health & Welfare Trust Fund, Retirement Trust

12   Fund, Electrical Industry Apprentice Trust Fund, NLMCC Fund, Dues Check-Off Fund,

13   National Electrical Benefit Fund, NECA Dues Fund) for each hour worked by employees

14   covered by said collective bargaining agreement.  The Health & Welfare Trust Fund is

15   authorized to collect monies due to said Trust Funds. The agreement further provides that such

16   payments are to be made not later than the 15th day of each month following the month for

17   which payment is made.

18      7. The aforementioned collective bargaining agreement also provides that the Defendant

19   will abide by the terms of the Trust documents establishing the Funds, as well as the rules and

20   regulations adopted by the trustees.

21      8.  In accordance with the trust documents and rules and regulations of the Funds, as

22   adopted by the trustees as well as the terms of the collective bargaining agreement, liquidated

23   damages are assessed on late payments at the rate of 15% of the amount due if the payment is

24   not received by the 15th of the month following the month incurred.

25      9.  The aforementioned collective bargaining agreement further provides that if legal

26   action must be taken to recover amounts due the Funds, the Defendant will pay the actual and

27   reasonable attorney's fees incurred by the Funds, and all court costs. 29 U.S.C. Section 1132

28   also requires the Defendant to pay such fees and costs.

**COMPLAINT FOR MONEY ON A BREACH OF COLLECTIVE BARGAINING AGREEMENT**

10. Pursuant to the terms of said agreement, there is now due, owing and unpaid from Defendants to Plaintiffs for the months of June 2007 through March 2008, an as yet unascertained sum, plus 15% liquidated damages according to contract; plus interest thereon at the legal rate.

11. Plaintiffs, through their agents, have made demand for payment but Defendants have failed to make any payments to date on the amount due.

12. On information and belief, additional monies are due for the periods April 1, 2008, to the present.

13. The obligation of the said Defendants, pursuant to the collective bargaining agreement set forth in Paragraph 7 above is a continuing obligation; Defendants may be continuing to breach said agreement by failure to pay monies due thereunder to Plaintiffs. The additional sums still due and owing, because of such breach, are presently unknown, but will be determined hereafter. In order to recover said additional sums in this action, Plaintiffs request that they be allowed to amend the complaint at or before the time of judgment to set forth said additional sums which may be due when said sums are determined and additional attorney's fees for collection thereof.

14. Plaintiffs' actual attorney's fees and costs will not be known until after this matter is concluded.

15. By reason of the aforementioned conduct of the Defendants, the Funds have suffered, and will continue to suffer, harm and actual and impending irreparable loss in that monies will not be available to provide contractual benefits to participants and beneficiaries of the Funds; the Funds will suffer excessive administrative and legal costs in continuing attempts to collect monies not submitted on a timely basis; the Funds will not have the benefit of investment income on monies due to the Funds from these Defendants; and individual participants in the Fund will not receive their contractual benefits.

WHEREFORE, Plaintiffs pray this Court:

1. Issue an injunction perpetually enjoining and restraining the Defendant, its officers, agents, successors, employees, attorneys and all those in active concert or participation with

3

**COMPLAINT FOR MONEY ON A BREACH OF COLLECTIVE BARGAINING AGREEMENT**

1  them from the conduct complained of herein;

2      2.    Award the Plaintiffs judgment for amounts due for the period June 2007

3  through March 2008, in an as yet unascertained sum, plus 15% liquidated damages according

4  to contract; plus interest thereon at the legal rate, plus an amount to be submitted to the Court

5  at the time of entry of judgment as attorney's fees plus their costs and disbursements in this

6  action, all pursuant to 29 U.S.C. Section 1132(g)(2);

7      3.  Award to Plaintiffs such other relief as this Court shall deem appropriate.

8

9  Dated this 27 day of ___March___ 2008

10

11

12              SUE CAMPBELL
                Attorney for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR MONEY ON A BREACH OF COLLECTIVE BARGAINING AGREEMENT**

# INSIDE WIREMAN AGREEMENT

BETWEEN



## LOCAL UNION 302
### INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

AND

### CONTRA COSTA CHAPTER



## NATIONAL ELECTRICAL CONTRACTORS' ASSOCIATION, INC.

## 2005 - 2008

# HOLIDAYS

New Year's Day
Martin Luther King, Jr. Day
Presidents Day
Memorial Day
Fourth of July
Labor Day
Thanksgiving Day
Day After Thanksgiving
Christmas Day

**The following is the current agreement in effect as agreed upon between the Contra Costa Chapter, National Electrical Contractors' Association and Local Union 302, on June 1, 2005 and approved by Edwin D. Hill, President, I.B.E.W. on November 15, 2005.**

# INDEX

| ART. | SEC. | | PG. |
|------|------|---|-----|
| V | 12 | Apprentice Ratio | 47 |
| | | Bargaining Representative | 1 |
| | | Basic Principles | 2 |
| II | 12 | Cancellation Clause | 20 |
| | | Definitions | 14 |
| II | 13 | Disability Insurance | 15 |
| I | 4,5 | Disputes | 4-6 |
| II | 4 | Drug and Alcohol Policy | 8 |
| I | 1 | Effective Date | 3 |
| III | 9 | Electrical Industry Fund | 36 |
| V | 36 | Electrical Welders (Certified) | 58-59 |
| III | 6 | Employees Benefit Agreement | 31-32 |
| II | 2 | Employer Qualifications | 7 |
| II | 1 | Employer Rights | 6 |
| II | 10 | Foreman Call-Out | 10-11 |
| V | 17,18, 18a,19 | Foreman Responsibilities | 49-50 |
| I | 4,5 | Grievances | 4-5 |
| III | 8 | Health & Welfare | 35 |
| III | 14 | High-Time Insurance | 40 |
| III | 1,2 | Hours | 21-26 |
| V | 30 | IBEW Labels | 56 |
| I | 4,5 | Labor-Management Committee | 4-6 |
| IV | 1 | National Electrical Industry Fund | 41 |
| III | 10 | National Labor-Management Cooperation Fund | 36-38 |
| V | 33 | Outside Firms | 56-57 |
| III | 1,2,3 | Overtime Rate of Pay | 21-26 |
| III | 15 | Payment of Wages | 40-41 |
| III | 5 | Public Works | 28 |
| II | 11 | Referral Procedure | 11-17 |
| II | 15,16 | Removal from Jobs | 39-40 |
| II | 11b | Repeated Discharge | 15-16 |
| V | 24 | Required Tools | 52 |
| III | 7 | Retirement Plan | 32-35 |
| | | Scope of Work | 1 |

— i —

# INDEX (cont'd.)

| ART. | SEC. | | PG. |
|------|------|---|-----|
| III | 2 | Shift Differential Pay | 25-26 |
| V | 27 | Shop to Job Operations | 53-54 |
| V | 20,21 | Show-Up Pay | 15, 50, 51 |
| II | 11(a) | Show-Up Time | 15 |
| | | Signed Agreement — | |
| | | By Contra Costa Chapter, National | |
| | | Electrical Contractor's Association | 60 |
| | | By Local Union 302, International | |
| | | Brotherhood of Electrical Workers | 60 |
| V | 35 | Signs on Vehicles | 58 |
| II | 13 | Social Security | 18 |
| V | 1-17 | Standard Apprentice Language | 42-49 |
| II | 18 | Steward Responsibilities | 19-20 |
| II | 21(b) | Subletting Work by Employers | 20-21 |
| III | 11 | Surety Bonds | 39 |
| I | 1,2,3 | Term of the Agreement | 3-4 |
| V | 22 | Termination of Work | 51 |
| III | 5A | Trust Fund Contributions | 28-38 |
| II | 13 | Unemployment Insurance | 18 |
| III | 5B | Union Dues Checkoff | 31 |
| II | 2-10 | Union Rights | 6 |
| II | 12 | Union Security | 17 |
| V | 27,28 | Use of Automobile | 53-54 |
| III | 15 | Wage Payments | 40-41 |
| | | Wage Rates — | |
| III | 5 | Journeyman | 27 |
| III | 5 | Apprentices | 28 |
| V | 26 | Work Outside Local Union Jurisdiction | 53 |
| III | 1 | Working Conditions | 21 |
| II | 13 | Workman's Compensation | 18 |
| V | 34 | Workmanship | 57-58 |

## Effective June 1, 2005

Agreement by and between the International Brotherhood of Electrical Workers, Local Union 302 and the Contra Costa Chapter of the National Electrical Contractors' Association, Inc. It shall apply to all firms who sign a letter of assent to be bound by this Agreement. As used hereinafter in this Agreement, the term "Union" shall mean Local Union 302, International Brotherhood of Electrical Workers, and the term "Chapter" shall mean the Contra Costa Chapter of the National Electrical Contractor's Association, Inc. The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## SCOPE

Electrical employees employed under the terms of this Agreement shall do all electrical construction, installation, or erection work including fabrication or prefabrication of boxes, brackets, bends and nipples and all electrical maintenance thereon including the final running tests. This section shall not apply to the use of catalogue items which are available to the contractors in the industry nor be applied or interpreted in any manner contrary to applicable law. This section shall include the installation and maintenance of temporary wiring, and the installation of all electrical lighting, heat and power equipment, photovoltaic systems, installation of all raceway systems including underground conduits and all supports, electrical and electronic loop systems associated with process control instrumentation, and motor control systems.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union and the Public. Progress in industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences by rational, common-sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
### EFFECTIVE DATE – CHANGES
### TERM OF THE AGREEMENT

**Article I, Section 1** - This Agreement shall take effect June 1, 2005 and shall remain in effect through May 31, 2008, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year unless changed or terminated in the way later provided herein.

**Article I, Section 2**

(a)  Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least ninety (90) days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b)  Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c)  The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)  Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month

the job, unless removed by the Business Manager; this requirement shall not apply when a job is shut down. Stewards may be discharged for cause upon twelve (12) hours prior notification of the Business Manager, but subject to review by the Joint Conference Committee.

**Article II, Section 19** - The representative of the Union shall be allowed access to any shop or job at any reasonable time where electrical employees are employed under the terms of this Agreement provided he first reports to the Employer's local office.

**Article II, Section 20** - No Employer shall directly or indirectly or by any subterfuge, sublet or contract with any electrical employee, all or any part of the labor services required by any contract of such Employer.

**Article II, Section 21**

(a)   The Local Union is a part of the International Brotherhood of Electrical Workers, and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Section (b) of this Section will be sufficient cause for the cancellation of his Agreement by the Local Union, after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

(b)   The subletting, assigning or transfer by an individual Employer of any work in connection with the electrical work to any person, firm or corporation

not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction alteration, painting or repair of a building structure or other work, will be deemed a material breach  of this agreement.

(c)   All charges of violations of Section (b) of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

**Article II, Section 22** - Any negotiated wage increase provided for in this Agreement, payment for which is prohibited by a government wage or price freeze, shall become payable only on jobs that are bid and started after the wage or price freeze is lifted.

## ARTICLE III
## HOURS - WAGE PAYMENTS - APPRENTICES WORKING CONDITIONS

**Article III, Section 1** - Hours of Work - The work week will start on Monday and conclude on Sunday. Eight (8) hours per day shall constitute a standard work day between the hours of 7:00 a.m. and 4:30 p.m. Employees shall receive a one-half (½) hour lunch break no later than five hours after starting time. Forty (40) hours per week, Monday through Friday, shall constitute a regular week's work. Nothing herein shall be construed as guaranteeing

any employee eight (8) hours per day or forty (40) hours per week.

Overtime - The first two hours worked before or after the regularly established shift hours and the first eight (8) hours worked on Saturday shall be paid at the rate of time and one half (1 ½). All other overtime worked shall be paid at the rate of double time.

### OPTIONAL FOUR TEN-HOUR DAY:

At the option of the contractor/s and with one week's notice, a four day per week, ten (10) hour per day work shift may be established between the hours of 6:00 A.M. and 5:30 P.M. The regular work week shall be from Monday through Thursday. Pay for each of these four days shall be ten (10) hours at the straight-time hourly rate.

If a fifth day is worked, the pay shall be one and one-half (1 ½) times the straight-time hourly rate for the first ten (10) hours worked. All work in excess of the ten (10) hours shall be paid at two (2) times the straight-time hourly rate.

If a sixth day is worked, the pay shall be two (2) times the straight-time hourly rate.

A staggered shift/s, Monday through Thursday or Tuesday through Friday, may be utilized, if the work areas become overly congested.

At the option of the contractor and with one weeks notice, a five day per week eight hour per day shift may be re-established.

— 22 —

There shall be no recognized or organized coffee breaks or rest periods during working hours provided, however, when working conditions permit, the workmen will be permitted to have personal thermos bottles, the contents of which may be consumed during working hours at their assigned work locations. Without limiting the foregoing, when the contractor/s has opted to establish a four-day work week pursuant to this section, and, when working conditions permit, the workmen will be permitted to consume contents of their thermos at their assigned locations during the second half of the work shift.

Each shop in the jurisdiction of the Local Union shall be allowed workmen covered by this Agreement for residential service, maintenance repair, jobbing and shop work only on Saturdays at the straight-time rates. Said workmen shall be paid a minimum of eight hours and they have Monday as their regular day off, and any work that they perform on said Monday shall be paid at the time and one-half rate. Shop work shall not be construed to include prefabrication for new construction. Said workman covered by this Agreement and vehicles to be registered in writing and confirmed by the Business Manager.

Workmen shall not report to the Employer's shop more than ten minutes prior to the established starting time and shall leave the shop or job by the established quitting time of each work day.

When workmen are to report to a job they shall be at their reporting point prepared to start work at starting time. If the reporting point is over a fifteen-minute walk from the assigned parking area, the Employer

— 23 —

shall provide transportation or the walk-in time shall be considered as time worked.

All work performed in excess of ten (10) hours per day, except Saturdays, after eight hours, as described in this section, Sundays and the following holidays: New Year's Day, Martin Luther King, Jr. Day, President's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, day after Thanksgiving and Christmas Day shall be paid for at double the straight-time rate of pay. When any of the above holidays fall on Sunday, the following Monday will be observed in lieu thereof. When any of the above holidays fall on Saturday, the previous Friday will be observed in lieu thereof. All overtime work shall be reported to the Business Manager prior to being worked except emergency repair and service calls which shall be reported the following work day.

In addition to the normal holiday schedule, Carpenters' "off-days" shall be observed on jobs where there are Carpenters observing those days as non-work days. Carpenter's "off-days" shall not be observed on jobs where Carpenters are not working.

Each employee shall have the opportunity to take two weeks vacation during each calendar year.

Any electrical employee called for duty outside of the regular working hours for emergency repair work or service calls shall receive a minimum of one hour's pay at double time; however, any electrical employee called for duty outside of the regular working hours on jobs in progress shall receive a minimum of two hours' pay at the double-time rate. In the event an

electrical employee is required to work during his regular lunch period, he shall receive the regular overtime rate for such work, and shall be granted a thirty-minute lunch period with pay, as soon thereafter as practical.

When an electrical employee has worked six or more hours, immediately previous to starting the regular work day, he shall receive the overtime rate until relieved from duty.

**Article III, Section 2** - When so elected by the Contractor, multiple shifts of at least five days duration may be worked when two or three shifts are worked.

The first shift (day shift) shall be worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall receive eight hours pay at the regular hourly rate for eight hours work.

The second shift (swing shift) shall be worked between the hours of 4:30 P.M. and 12:30 A.M. Workmen on the "swing shift" shall receive eight hours pay at the regular hourly rate plus ten percent (10%) for seven and one-half (7 ½) hours work.

The third shift (graveyard shift) shall be worked between the hours of 12:30 A.M. and 8:00 A.M. Workmen on the "graveyard shift" shall receive eight hours pay at the regular hourly rate plus fifteen percent (15%) for seven hours work.

A lunch period of thirty (30) minutes shall be allowed on each shift.

All overtime work required after the completion of a regular shift shall be paid at one and one-half (1 ½) times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight-time rate shall be the maximum compensation for any hour worked.

There shall be no requirement for a "day shift" when either the second or third shift is worked.

**Article III, Section 2A** - Employees working under the shift clause outlined in Article III, Section 2 shall have their fringe benefit contributions paid on a full eight (8) or ten (10) hour basis, depending on the shift. Employees working less than a full shift shall receive fringe benefit contributions based on hours actually worked.

**Article III, Section 3** - Electrical employees shall receive a one-half hour lunch period with pay and meals at the expense of the Employer, if the employee is required to work beyond ten (10) consecutive hours (not including the regular one-half hour lunch period), and after working each additional four hours. Hot meals shall be provided at the Employer's expense in such case, provided hot meals are conveniently available. The entire crew shall not leave the job at one time in the event of an emergency period. Reimbursements for such meals shall not exceed $10.00 for the first meal or $8.00 for each additional meal.

— 26 —

**Article III, Section 4** - No work shall be performed on Labor Day, except in case of emergency and then only after permission is granted by the Business Manager of the Union.

**Article III, Section 5** - The following shall be the minimum rate of wages including union dues check-off.

**CLASS IV WAGE RATES\***
Including Union Dues Check-Off
Effective June 1, 2005

| Classification | 06/1/05 Per Hour | 6/1/06 $1.75 | 06/1/07 $2.00 |
|---|---|---|---|
| Journeyman Wireman | $ 38.01 | To Be Determined After Allocation | |
| Foreman | $ 43.26** | To Be Determined After Allocation | |
| General Foreman | $ 48.51*** | To Be Determined After Allocation | |
| Senior Gen. Foreman | $ 50.61**** | To Be Determined After Allocation | |
| Journeyman Wireman when Splicing Cable | $ 43.26 | To Be Determined After Allocation | |
| Journeyman Wireman when Welding | $ 42.21***** | To Be Determined After Allocation | |

\* The Class IV Wage Rates are based on a pension contribution rate of $8.00/hr. Actual wage rates may be affected by pension classification.

Effective 5/31/03 -
\*\*   Journeyman rate plus 12 ½%, \*\*\* Journeyman rate plus 25%,
\*\*\*\* Journeyman rate plus 30%  \*\*\*\*\* Journeyman rate plus 10%

— 27 —

## APPRENTICE WIREMAN

### APPRENTICE WIREMAN – TEN PERIODS

| | |
|---|---|
| 1st PERIOD | 40% of JOURNEYMAN WIREMAN RATE |
| 2nd PERIOD | 45% of JOURNEYMAN WIREMAN RATE |
| 3rd PERIOD | 50% of JOURNEYMAN WIREMAN RATE |
| 4th PERIOD | 55% of JOURNEYMAN WIREMAN RATE |
| 5th PERIOD | 60% of JOURNEYMAN WIREMAN RATE |
| 6th PERIOD | 65% of JOURNEYMAN WIREMAN RATE |
| 7th PERIOD | 70% of JOURNEYMAN WIREMAN RATE |
| 8th PERIOD | 75% of JOURNEYMAN WIREMAN RATE |
| 9th PERIOD | 80% of JOURNEYMAN WIREMAN RATE |
| 10th PERIOD | 90% of JOURNEYMAN WIREMAN RATE |

(Apprentice pay rates are computed on the Class I wage rate.)

PUBLIC WORKS. When work performed on Public Works is subject to prevailing wages, terms and conditions pursuant to applicable law, then such published wages, terms and conditions shall govern and take precedence over any other wages, terms or conditions as set forth in this Agreement, provided that the Employer will pay all increases in fringe benefit contributions required pursuant to this Agreement.

**Article III, Section 5A** - TRUST FUND CONTRIBUTIONS AND UNION DUES CHECKOFF - Method of Calculating and Transmitting Trust Fund Contributions and Union Dues to the Bank or Depository.

(a)  The Employer shall make all legal payroll withholdings for Income Tax, Social Security, Unemployment Insurance, etc., from the total of wages and shall then withhold the full amount of the union dues for transmittal on a monthly basis to the bank. The amount of the union dues withheld shall be shown on payroll check stubs.

(b)  The monthly transmittal shall cover every employee subject to this Agreement on the payroll for all payroll weeks ending within the calendar month.

(c)  The monthly transmittal and accompanying check shall also include all trust fund contributions for all employee's covered by this Agreement, including the Retirement Trust, Health and Welfare Trust, Electrical Industry Trust and the National Electrical Benefit Fund.

(d)  All Trust Fund contributions must be paid to all electrical employees who are directed by the individual Employer to work on jobs inside the jurisdiction of Local Union 302. When men are sent to work outside the jurisdiction of Local Union 302, they do not come under the provisions of this section.

(e)  On the monthly transmittal form, the following information concerning each employee shall be set forth in separate columns: (1) Social Security Number, (2) Name of Employee, (3) The Number of Hours Worked, (4) The Total Earnings (including dues checkoff). The total of the amounts shall be given together with the check number and date of payment.

(f)  The monthly transmittal form and accompanying check must be received by the bank or depository selected by the parties to this Agreement no later than the fifteenth of the following month.

Any contractor who fails to report or to make contributions due to any foregoing Fund before the fifteenth (15th) day of the month in which it is due, or who issues a non-sufficient check shall be considered delinquent. Each delinquent contractor shall pay to the Funds involved liquidated damages in the amount of fifteen percent (15%) of the indebtedness or twenty dollars ($20.00) for each month of delinquency, whichever is greater.

In the event any Employer does not, in whole or in part, pay any fringe contribution, and/or wages, required or contended to be required by this Agreement, and it is necessary to institute collection action by negotiating or litigation, the following special provisions will be applicable to such collection efforts:

Whenever, as a matter of proper and lawful judgment, it is determined that a settlement should be made and the terms of such settlement, or any judgment do not provide for full recovery of any due wages and fringe benefits, to the extent lawful the settlement shall provide, or efforts shall be made to have a judgment provide that the aggregate sum so collected, after payment of expenses incurred in said collection efforts or litigation, will be allocated in the following order or priority until the amount of the settlement or judgment is fully disbursed.

First:     Any Unpaid Wage Delinquencies
Second:  Local Pension Delinquencies
Third:    Health and Welfare Delinquencies
Fourth:  NEBF Delinquencies
Fifth:    Electrical Industry Fund Delinquencies
Sixth:    National Labor Management Cooperative Committee Delinquencies
Seventh: Union Dues Delinquencies
Eighth:   NECA Dues Delinquencies

To the extent that authorized expenses shall have been incurred in effecting such collection, such expenses shall be allocated pro-rata to the Fund or Trust in accordance with the percentage such Fund or Trust receives from the recovery.

**Article III, Section 5B** - UNION DUES CHECKOFF - The Employer agrees to deduct and forward to the Financial Secretary of the Local Union — upon receipt of a voluntary written authorization — the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

**Article III, Section 6** - It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized oth-

erwise by the NEBF, the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignees. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

An individual employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual employer to comply with the applicable provision of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of his labor agreement.

**Article III, Section 7** - RETIREMENT PLAN - The Employer agrees to become a party to the Electrical Worker's Retirement Plan Trust Agreement, and

— 32 —

shall pay the sum per hour as designated below for each hour worked by employees working under the terms of this Agreement, with the exception of unindentured and first year apprentices. All payments shall be made monthly to the Contra Costa County Electrical Worker's Retirement Plan Trust Fund to provide retirement benefits for said employees.

There shall be six classifications of employees under this Plan. Classification is based upon industry seniority under the Collective Bargaining Agreement, and the attainment of advanced levels of experience at the trade. The terms and conditions of this Agreement shall be applied in accordance with attained classifications. Applications for classification designations shall be submitted to the Union and classification designations granted by the Union's Executive Board upon verification that the applicant has attained the requisite experience as out-lined below:

Class I employees shall include all second, third, fourth and fifth year Apprentices and Journeyman employees with less than two years Journeyman level experience.

Class II employees shall consist of employees who have performed at least two years work at the trade at the Journeyman level or above. Traveling Journeymen shall be presumed to qualify for Class II status only, unless sufficient proof of the requisite experience for Class III or IV dispatch is presented at the time of initial dispatch.

— 33 —

Class III employees shall consist of employees who have performed at least three years of work at the Journeyman level or above.

Class IV employees shall consist of employees who have performed at least four years of work at the Journeyman level or above.

Class V employees shall consist of employees who have performed at least five years of work at the Journeyman level or above.

Class VI employees shall consist of employees who have performed at least six years of work at the Journeyman level or above. Each employee shall submit to the Local Union before April 1 or October 1 of each year any classification change request. Notification shall be made on an approved form and in accordance with the rules and regulations adopted by the Union and approved by the Chapter. Upon notification by the Union to the Employer of an approved classification change, the Employer shall pay wages and fringe contributions at the approved classification level until and unless notified by the Union of a classification change. In no event, however, shall a classification change be implemented except by proper notification, and no more than two classification changes may be effected annually and shall be effective on June 1 or December 1.

Contributions required to be made on behalf of each classification shall be as follows:

| Class I | - | $2.00 |
|---------|---|-------|
| Class II | - | $4.00 |
| Class III | - | $6.00 |
| Class IV | - | $8.00 |
| Class V | - | $9.00 |
| Class VI | - | $10.00 |

In no event shall the contribution levels outlined above taken together with any other defined contribution or defined benefit plan maintained by the Employer for these classifications of employees exceed the maximum limitations on annual additions contained in Internal Revenue Code Section 415. In the event it is determined any annual addition for any employee exceeds the maximum limitation contained in Section 415, the Chapter and Union will meet and confer for the purposes of reaching an agreement to limit further contributions on behalf of such employee to assure that the maximum limitation is not exceeded.

**Article III, Section 8** - HEALTH AND WELFARE - The Employer agrees to become a party to and comply with from the effective date all of the provisions of the Contra Costa County Electrical Worker's Health and Welfare Trust Agreement as amended (copy of which is on file in the Union Office) and shall pay the sum of $8.90 per hour for each hour worked by all employees working under the terms of this Agreement. These payments shall be made monthly to the Contra Costa County Electrical Workers Health and Welfare Trust Fund to provide health and welfare benefits for said employees and retirees.

**Article III, Section 9** - ELECTRICAL INDUSTRY FUND - Every individual Employer shall pay into the "Electrical Industry Fund" seventy-five cents ($.75) per hour for each hour worked by every employee covered by this Agreement. Said money shall be received and disbursed by the Industry Fund pursuant to agreement of the parties hereto. Contractors physically performing work covered by the scope of this Agreement pursuant to Article II, Section 1, shall also contribute to the Electrical Industry Trust on the same basis. The total of such sums shall be paid monthly by the fifteenth (15th) of the following month to the Trustee of the Fund. The payments shall be accompanied by an approved transmittal form.

**Article III, Section 10** - NATIONAL LABOR-MAN-AGEMENT COOPERATION FUND -The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. 175(a) and

Section 302(c) (9) of the Labor-Management Relations Act, 29 U.S.C. 186(c)(9). The purposes of this Fund include the following:

(1) to improve communication between representatives of labor and management;

(2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

(3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

(6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(8) to engage in public education and other programs to expand the economic development of the electrical construction industry;

(9) to enhance the involvement of workers in making decisions that affect their working lives; and

(10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Each Employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Contra Costa Chapter, NECA, or its designee, shall be the collection agent for this Fund.

If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

— 38 —

**Article III, Section 11** - Effective June 1, 1999, all Employers will have to post a surety bond as follows: Any shop or project employing one (1) employee covered by this Agreement will have to post a fifteen hundred dollar ($1,500) bond or cash; any shop or project employing from two (2) to five (5) employees covered by this Agreement will have to post a seventy-five hundred dollar ($7,500) bond or cash; any shop or project employing from six (6) employees to ten (10) employees covered by this Agreement will have to post a ten thousand dollar ($10,000.00) bond or cash; any shop or project employing more than ten (10) employees covered by this Agreement will have to post a fifteen thousand dollar ($15,000.00) bond or cash. Said bond shall be in a form acceptable to the Union and guarantee payment of current, delinquent and future wages and/or fringe benefits provided for in this Agreement.

**Article III, Section 12** - Individual Employers who fail to remit regularly all fringe benefits shall be subject to having this Agreement terminated upon seventy-two (72) hours notice in writing, being served by the Union provided the Employer fails to show positive proof that delinquent payments have been made to the Health & Welfare Trust Fund and the Retirement Trust Fund. Failure of an Employer to comply with applicable provisions of the Electrical Worker's Health and Welfare Trust Agreement and Retirement Trust Agreement shall constitute a breach of the Agreement insofar as such Employer is concerned.

**Article III, Section 13** - The Association and/or Employer agrees that it shall not constitute a violation of

— 39 —

this Agreement for the Union to remove the workmen employed by an Employer who is delinquent in any wage or fringe payment due under the terms of this Agreement.

**Article III, Section 14** - For all employees covered by this Agreement, a three hundred thousand dollar ($300,000.00) accidental death or dismemberment insurance policy shall be provided by the Electrical Industry Fund when such employees are subject to the following:

(a)  Where workmen are required to work sixty (60) feet or more from the ground or supporting structures from trusses, stacks, towers, tanks, bos'n chairs, swinging or rolling scaffolding, or open platforms where the workman is subject to a direct fall or where he has to work from a ladder or other support on a platform within five (5) feet of any direct fall opening;

(b)  The elevation of the above mentioned seating, footing or platform from which work is performed, under the above conditions, governs the applicability of the coverage.

**Article III, Section 15** - Wages shall be paid weekly in cash or by check on or before the established quitting time on Thursday of each week and not more than four days' wages shall be withheld. Wages shall be paid on the job or workmen shall be allowed a sufficient amount of time to reach the Employer's shop before quitting time. Double time shall be charged for time spent waiting for pay, except in cases when the employer or his representative is

detained due to circumstances beyond his control. Any electrical employee laid off, or discharged by the Employer shall be paid all of his wages immediately. Any electrical employee laid off in the forenoon shall be paid until noon. Any electrical employee laid off in the afternoon shall be paid until the established quitting time. Any electrical employee discharged for cause shall be paid only for the time worked. Any time spent waiting for pay shall be charged at the regular rate until payment is made, except in cases when the Employer or his representative is detained due to circumstances beyond his control.

## ARTICLE IV
## NATIONAL ELECTRICAL INDUSTRY FUND (NEIF)

**Article IV, Section 1** - Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

1)  Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year but not exceeding 150,000 man hours.

2)  One Hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages including overtime paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later that fifteen (15) calendar days following the last day of the month in which the labor was performed. Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

# ARTICLE V
## STANDARD
### INSIDE APPRENTICESHIP LANGUAGE

**Article V, Section 1** - There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of either 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

— 42 —

The JATC shall also be responsible for the training of apprentices, journeymen, installers, technicians and all others (unindentured, intermediate journeymen, etc.).

**Article V, Section 2** - All JATC member appointments, reappointments and acceptance of appointments shall be in writing. Each member shall be appointed for a four (4) year term, unless being appointed for a lesser period of time to complete an unexpired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign. All vacancies shall be filled immediately.

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for Trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

**Article V, Section 3** - Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation and resolve; as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article I of this agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

— 43 —

**Article V, Section 4** - There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a sub-committee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A sub-committee member may or may not be a member of the JATC.

**Article V, Section 5** - The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

**Article V, Section 6** - To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprentices with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

— 44 —

**Article V, Section 7** - All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at some time in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

**Article V, Section 8** - The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the job site ratio as per Article V, Section 12.

**Article V, Section 9** - Though the JATC cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active

— 45 —

list of qualified applicants shall be maintained by the JATC as per the selection procedures.

**Article V, Section 10** - To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualifications for apprenticeship. Unindentured workers shall not remain employed if apprentices become available for OJT assignment. Unindentured workers shall be used to meet job site ratios except on wage and hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding with the JATC and the employer——agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that they are not to work on wage and hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship. The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

**Article V, Section 11** - The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured. Contributions to other benefit plans may be addressed in other sections of this agreement.

**Article V, Section 12** - Each job site shall be allowed a ratio of two (2) apprentices for every three (3) Journeyman Wiremen.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| Etc. | Etc. |

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site.

All other physical locations where workers report for work are each considered to be a single, separate job site.

**Article V, Section 13** - An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and abil-

— 46 —

— 47 —

ity to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman.

An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Article V, Section 14** - Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

**Article V, Section 15** - The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor Management Relations Act of 1947 as amended, ERISA and other applicable regulations.

— 48 —

The Trustees authorized under this Trust agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Article V, Section 16** - All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local Industry Trust Agreement. The current rate of contribution is seventy five ($.75) cents per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

**Article V, Section 17** - A Foreman shall be designated by the Employer on any job requiring three or more Journeymen for a period of eight hours or more, unless the job is properly laid out by the Employer, his representative or a Foreman, and supervised each day.

A General Foreman shall be designated by the Employer on any job employing more than thirteen (13) Journeymen including the Foreman. General Foremen shall not be allowed to supervise more than fifty (50) men, excluding Apprentices, but including Foremen, on any one job. A General Foreman shall act in a supervisory capacity only.

A Senior General Foreman will be designated when there are two or more General Formen on a job site. The Senior General Foreman shall be allowed to supervise his own crew of Foremen, in addition to the other General Foremen on the job.

— 49 —

## INSIDE WIREMAN AGREEMENT
### JUNE 1, 2005

IN WITNESS WHEREOF, the parties have executed this Agreement on this the lst day of June, 2005.

SIGNED FOR THE CONTRA COSTA CHAPTER, NATIONAL ELECTRICAL CONTRACTORS' ASSOCIATION, INC.

SIGNED FOR THE LOCAL UNION 302, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

_____
M. Dias

_____
B. Miller

_____
S. Stewart

_____
J. Szuch Jr.

_____
R. Trebino

_____
D. Watson

_____
M. Geller

_____
H. Barton

_____
K. Bartosek

_____
T. Hansen

_____
R. McNally

_____
T. Panglila

_____
D. Peterson

_____
M. Yarbrough

SUBJECT TO THE APPROVAL OF THE INTER-NATIONAL PRESIDENT OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

Revised January 6, 2006

— 60 —

**NOTES**

—61—

## LETTER OF ASSENT - B

This is to certify that the undersigned employer has examined a copy of the current approved[1] _____Inside_____ labor agreement between[2] __Contra Costa County Chapter, N.E.C.A., Inc.__ and Local Union[3] __302__, IBEW.

The undersigned employer hereby agrees to comply with all of the provisions contained in the above mentioned agreement and all approved amendments thereto, as well as subsequent approved agreements between[2] __Contra Costa County Chapter, N.E.C.A., Inc__ and Local Union[3] __302__, IBEW. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto, and any subsequent approved agreements.

This letter of assent shall become effective for the undersigned employer on the [4] __30__ day of __April__, __1998__ and shall remain in effect unless and until terminated as provided in the following paragraph.

If the undersigned employer does NOT intend to comply with and be bound by all of the provisions in any subsequently approved agreements between[2] __Contra Costa County Chapter, N.E.C.A., Inc.__ and Local Union[3] __302__, IBEW, he shall so notify the Local Union in writing at least one hundred (100) days prior to the termination date of the then current agreement.

The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreements requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

__3D Technical Services__
[5]Name of Firm

__P.O. Box 27455__
Street Address/P, O. Box Number

__Concord, CA  94527__
City, State (Abbr.) Zip Code

[6]Federal Employer Identification No: __91-1818246__

SIGNED FOR THE EMPLOYER
BY _(signature)_
(original signature)
NAME[8] __DANIEL FARLEY__
TITLE/DATE __OWNER  /  5/20/1998__

JUN 2 5 1998
J. J. Barry, President
This approval does not make the International a party to this agreement

SIGNED FOR THE UNION[3] __302__, IBEW
BY _(signature)_
(original signature)
NAME[8] __Michael W. Yarbrough__
TITLE/DATE __Bus. Mgr./Fin. Secty__
DATE: __5-26-98__

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1]TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.
[2]NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[3]LOCAL UNION
Insert Local Union Number.
[4]EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.
[5]EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.
[6]FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.
[7]SIGNATURES
[8]SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures--not reproduced--of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IMPORTANT: These forms are printed on special paper and no carbon paper is required for duplicate copies. Remove from the pad enough copies of the form for a complete set and complete the form

# CIVIL COVER SHEET

JS 44 - No. CALIF. (Rev. 4/97)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

MIKE GELLER AND MIKE YARBROUGH AS TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 302 HEALTH AND WELFARE AND PENSION TRUST FUNDS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Contra Costa

**DEFENDANTS**

3-D TECHNICAL SERVICES, INC.,
a California Corporation

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.   Contra Costa

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sue Campbell, Attorney at Law          (408) 277-0648
1155 North First Street, Suite 101
San Jose, California 95112

ATTORNEYS (IF KNOWN)

**C08   01819  PVT**

## II. BASIS OF JURISDICTION (PLACE AN "✓" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "✓" IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                      AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "✓" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transfered from Another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "✓" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☒ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 791 Empl Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | | ☐ 870 Taxes (US Plaintiff or Defendant | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

U.S. CIVIL STATUTE:      29 U.S.C. Sections 185, 1132
STATEMENT OF CAUSE:      Violation of ERISA, nonpayment of employee benefits

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE A "✓" IN ONE BOX ONLY)   ☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE
March 2, 2008

SIGNATURE OF ATTORNEY OF RECORD
SUE CAMPBELL